HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CANYON ESTATES CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,

    Plaintiff,

    v.

ATAIN SPECIALTY INSURANCE COMPANY; INDIAN HARBOR INSURANCE COMPANY; WESTCHESTER SURPLUS LINES INSURANCE COMPANY; GREAT LAKES INSURANCE, SE,

    Defendants.

Case No.  2:18-cv-01761-RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the Court on Defendant Indian Harbor's Motion for Summary Judgment (Dkt. # 147) and Plaintiff's Motion for Summary Judgment (Dkt. # 155).  Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons below, Defendant's motion is **DENIED** and Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

ORDER – 1

In ruling on the parties' previous cross motions for summary judgment, the Court summarized the facts of this case. Dkt. # 119. To avoid duplication, the Court refers the parties to that order for background information.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

## III.  DISCUSSION

In their respective motions for summary judgment, the parties raise several issues: coverage, bad faith, violation of Washington's Consumer Protection Act ("CPA"), violation of the Insurance Fairness Conduct Act ("IFCA"), and offset. The Court addresses each in turn.

### A.  Coverage

Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law." *State Farm General Ins. Co. v. Emerson*, 687 P.2d

ORDER – 2

1139 (Wash. 1984). "The entire contract must be construed together in order to give force and effect to each clause" and must be enforced "as written if the language is clear and unambiguous." *Washington Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County*, 771 P.2d 701, 706-07 (Wash. 1989). If, on the other hand, "a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended." *Transcon. Ins. Co. v. Washington Pub. Utilities Districts' Util. Sys.*, 760 P.2d 337, 340 (Wash. 1988). An insurance contract "will be given a practical and reasonable interpretation that fulfills the object and purpose of the contract rather than a strained or forced construction that leads to an absurd conclusion, or that renders the contract nonsensical or ineffective." *Washington Pub.*, 771 P.2d at 707.

Further, insurance contracts are interpreted "as an average insurance purchaser would understand them," and courts must "give undefined terms in these contracts their 'plain, ordinary, and popular' meaning." *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 311-12 (Wash. 1994) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507 (Wash. 1990)); *see also State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1142 (Wash. 1984) (insurance contract interpreted "according to the way it would be understood by the average insurance purchaser").

A determination of coverage under an insurance contract is a two-step process. *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003-04 (Wash. 1992). First, [t]he insured must show the loss falls within the scope of the policy's insured losses." *Id.* Second, "[t]o avoid coverage, the insurer must then show the loss is excluded by specific policy language." *Id.*; *see also Pub. Employees Mut. Ins. Co. v. Rash*, 740 P.2d 370 (Wash. Ct. App. 1987) ("[W]hen an insured establishes a prima facie case giving rise to coverage under the provisions of his policy, the burden is then upon the insurer to prove that the loss is not covered because of an exclusionary provision in the policy."). Though an exclusionary clause is "strictly construed against the insurer," its meaning "must be

ORDER – 3

determined in view of the policy as a whole." *Allstate Ins. Co. v. Calkins*, 793 P.2d 452 (Wash. Ct. App. 1990) (citing *Rodriguez v. Williams*, 729 P.2d 627 (Wash. 1986)).

Defendant Indian Harbor's insurance policy is an "all-risk" policy. Dkt. # 38. Plaintiff Canyon Estates Condominium Association ("Association") argues that, as such, the policy insures any risk not specifically excluded. Dkt. # 155 at 11-16. Because the peril of "water intrusion damage" is not specifically excluded, the argument goes, it is a covered peril under the policy. *Id.* Indian Harbor disagrees, calling the Association's argument a "semantics game." Dkt. # 157 at 15. Though it concedes that the policy contains no express exclusion for "water intrusion," Indian Harbor says that the policy excludes equivalent perils that are "functionally identical" to water intrusion. *Id.* Among them are exclusions for "perils of faulty workmanship or maintenance, wear and tear, gradual deterioration, rot and seepage or leakage of water." *Id.* at 7, 15. The Association seeks a ruling from the Court that water intrusion damage is covered under the policy and that coverage is owed here because Indian Harbor admits to water intrusion damage at the property. Dkt. # 155 at 11-16.

There are two steps to determine insurance coverage; the Association does not make it past the first. Factual issues prevent it from establishing that the loss incurred at the property falls within the policy's scope. The Association is thus not entitled to summary judgment on its coverage claim. That said, the Court rules as a matter of law that water intrusion damage to a building's exterior is a covered peril under the all-risk policy.

### i.   All-Risk Policy

Generally, there are two types of property insurance policies: named-peril and all-risk. *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 306 (Wash. 2012). Named-peril policies "provide coverage only for the specific risks enumerated in the policy and exclude all other risks." *Id.* (quoting Steven Plitt, Daniel Maldonado & Joshua D. Rogers, Introductory Concepts of the Risk; Public Policy Insurability, and

ORDER – 4

Causation, in 7 Couch on Insurance 3d § 101:7, at 101–17 (2006)).  Contrast all-risk policies, which "provide coverage for all risks unless the specific risk is excluded." *Id.* Under an all-risk policy, the risk of loss is generally allocated to the insurer. *Id.*

The Association characterizes the damage at the property as "water intrusion damage" or "damage resulting from penetration by water through the building's exteriors." Dkt. # 155 at 13-16.  Because the policy does not specifically exclude either, the Association says that such damage must be covered under the all-risk policy. *Id.*

Indian Harbor responds with two arguments.  First, it says that "water intrusion" is not a "distinct peril" but instead the functional equivalent of other, excluded perils. Dkt. # 157 at 13-16.  Second, it says that the Association has failed to prove that the water intrusion was fortuitous given that it knew of the property's "construction deficiencies" years before it made a claim. *Id.* at 16-17.

### (1) Distinct Peril

The Court begins with the language of the policy, which contains a "Perils Excluded" section.  Dkt. # 38 at 18-22.  That section does not contain a specific exclusion for "water intrusion damage" or "damage resulting from penetration by water through the buildings' exteriors." *See id.* Under an all-risk policy, because it is not explicitly excluded, this type of peril is generally covered.

According to the Association, other policy provisions support this interpretation. The policy expressly excludes coverage for damage to "[t]he *interior* of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not." *Id.* at 22 (emphasis added).  There is no analog, the Association says, for such harm done to a building's exterior.  Dkt. # 155 at 13-14.  In the Association's view, the exclusion shows that Indian Harbor knew how to exclude losses by "rain/wind-driven rain" but simply failed to do so for the exterior of a building. *Id.* The Association finds additional support in a policy endorsement.  Dkt. # 99-3 at 10.  Under that endorsement, the Association must pay a $50,000 deductible for loss caused by "water or

ORDER – 5

liquid damage resulting from . . . penetration by water or liquid through the building exterior." Dkt. # 99-3 at 10. The implication is that where there is a deductible there must be coverage. Dkt. # 155 at 4-5.

In response, Indian Harbor argues that the exclusion and the deductible cannot be used to "create coverage." Dkt. # 157 at 16. They do not grant coverage, Indian Harbor, but "subtract from it." *Id.*

The Court finds the Association's arguments more convincing. As the Association observes, the policy itself treats water intrusion damage (whether to the interior or exterior of a building) as a distinct peril. For example, the policy expressly excludes rain damage "whether driven by wind or not" done to "[t]he interior of any building or structure." Dkt. # 38 at 22. And it has a deductible for water damage caused by "penetration . . . through the building exterior." Dkt. # 99-3 at 10. The policy treats water intrusion damage (whether to the interior or exterior of a building) as a distinct peril—one that may be covered, excluded, or subject to a deductible. Here, water intrusion damage to a building's interior is a distinct peril that is excluded, whereas water intrusion damage to a building' exterior is a distinct peril that is covered and subject to a deductible.

Indian Harbor's argument is unpersuasive because the cases it cites do not address all-risk policies. Dkt. # 159 at 3-4. In the all-risk context, the risk of loss is on the insurer, and coverage is defined by what is not specifically excluded. The Court thus rejects Indian Harbor's premise: Exclusions indeed define the scope of Indian Harbor's coverage. What is covered is what is not excluded.

Separately, Indian Harbor argues that the Association plays a "semantics game." Dkt. # 157 at 15. Characterizing the damage as "water intrusion," Indian Harbor says, ignores that there are "functionally identical" perils that are excluded under the contract. *Id.* For example, the policy's "Perils Excluded" section contains exclusions for damage caused by "[f]aulty, inadequate or defective design," "faulty materials, faulty

ORDER – 6

workmanship or maintenance"; "rust," "wear and tear, or gradual deterioration"; and "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor." Dkt. # 38 at 19-20.

The Court concedes that these excluded perils could feasibly include "water intrusion" damage. For example, damage caused by "rust" or the "presence . . . of moisture" could conceivably encompass water intrusion damage to a building's exterior. The issue turns on whether the Court construes the exclusion broadly (in favor of the insurer) or narrowly (against the insurer). Washington law is resolute: exclusions must be construed narrowly against Indian Harbor. *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1134 (9th Cir. 2002) ("[In Washington,] [e]xclusions are strictly construed against the insurer because they are contrary to the protective purpose of insurance." (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983 P.2d 707, 711 (Wash. Ct. App. 1999)).

In sum, the Court makes the following rulings: The Indian Harbor policy is an all-risk policy. "Water intrusion damage and/or damage resulting from penetration by water through the buildings' exteriors" is a distinct peril not expressly excluded under that policy. Given that it must construe exclusions against Indian Harbor, the Court holds that the peril does not fall under the policy's excluded perils. Because "water intrusion damage and/or damage resulting from penetration by water through the buildings' exteriors" is distinct and not expressly excluded, it is thereby a covered peril under the Indian Harbor policy.

**(2) Damage to the Property**

To establish coverage, the Association must prove that the loss incurred at the property falls within the policy's scope. So far, it has established that water intrusion is a covered peril. It has not, however, proven that the loss at the property was in fact caused by water intrusion.

Whether the damage at the condominium is attributable to "water intrusion" or

ORDER – 7

instead to other, excluded perils is a disputed issue of fact. Reasonable minds could disagree. The Association suggests that the loss at the property was caused by water intrusion; Indian Harbor says that it was caused by "construction deficiencies," "poor maintenance," and "failure of building materials," among other things. *Compare* Dkt. # 155 at 5-7 *with* Dkt. # 157 at 8-9. And the parties have presented conflicting evidence. Dkt. # 111-1 at 3-5; Dkt. # 156-6 at 53-56. Because the Association will have the burden of proof at trial, to be entitled to summary judgment here, "it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The Association fails to meet that burden. Summary judgment as to coverage is denied.[1]

### (3) Fortuity

In every all-risk policy is the "unnamed exclusion" of fortuity. *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1187 (W.D. Wash. 2002). "The Washington Supreme Court has not addressed the concept of fortuity as it relates to all risks insurance policies." *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 815 (9th Cir. 2019). When a state's highest court has not decided an issue, federal courts must "predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). The Ninth Circuit has already made its prediction, and the Court will follow its lead. *Ingenco*, 921 F.3d at 815. It concluded that the Washington Supreme Court would "adopt a definition of fortuity consistent with the trend" set forth in the Restatement of Contracts, other circuits, and courts in this district and state. *Id.* (collecting cases). Under that trend, a fortuitous event is "one that is dependent upon chance, taking into account the knowledge of the parties." *Id.* The fortuity inquiry should consider, among other things, "whether a particular loss was certain to occur, the parties' perception of risk at the time the policy issued, and whether

---

[1] Because factual issues exist, the Court need not reach Indian Harbor's efficient proximate cause argument. Dkt. # 157 at 18-20.

ORDER – 8

the loss could reasonably have been foreseen." *Id.* "[T]he insured bears the burden of showing that it suffered a loss and that the loss is fortuitous." *Churchill*, 234 F. Supp. 2d at 1189; *see also Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043, 1048 (E.D. Wash. 1991) ("It is [the insured]'s responsibility to prove its loss is fortuitous . . . .").

To start, the Court rejects the Association's "mend the hold" argument. Dkt. # 159 at 6-9. Recognized under Washington common law, the "mend the hold" doctrine intends to "prevent insurers from shifting the grounds for non-performance from the reasons stated in the insurer's declination letter." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1245 (W.D. Wash. 2014). In Washington, the doctrine may be invoked "to preclude insurers from introducing new or changed bases for denying insurance coverage once litigation has begun." *Id.* According to the Association, Indian Harbor did not assert the fortuity doctrine when it first denied coverage, so it should not be able to assert it now. *Id.* The Court declines to apply the doctrine here for the simple reason that fortuity is part of the Association's inherent burden to show coverage under an all-risk policy. *Frank Coluccio Const. Co. v. King Cty.*, 150 P.3d 1147, 1156 (Wash. Ct. App. 2007) ("As a *condition precedent to coverage* under an all risk builders' risk insurance policy, the loss-causing instrumentality must have been brought about as the result of a fortuitous event." (emphasis added) (internal quotation marks omitted)); *Mkt. Place N. Condo. Ass'n v. Affiliated FM Ins. Co.*, No. 2:17-cv-00625-RSM, 2018 WL 2095733, at *3 (W.D. Wash. May 7, 2018) (rejecting an insured's argument that its insurer could not raise a fortuity defense during litigation given that it was not the basis for denying coverage because "[t]he fortuity requirement is inherent in every all-risk policy").

According to Indian Harbor, before it issued its policy, the Association knew that its condominium was in disrepair. Dkt. # 157 at 17. For example, it says that "the Association knew that its roofs, windows and decks (which were original to the

ORDER – 9

buildings' construction 50 years earlier) required replacement, that construction deficiencies existed (missing head or sill flashings around windows; lack of ventilation in deck construction), and that all of these areas were aged, rotted, and deteriorated." *Id.*

Indian Harbor has offered evidence showing that by at least 1999 the Association was informed that it would need to replace its roofs within the next ten years. Dkt. ## 158-1, 158-2. The Association, however, has failed to do so. Dkt. # 158-1 at 13-14. Later, in 2012, the Association was informed that some of its windows were in "fair to poor" condition with "[n]o head or sill flashings" and that it was "very common for condominiums to have problems with water intrusion due to poor window quality or poor installation and flashing details." Dkt. # 158-4 at 6. Yet, when asked whether it repaired any window areas after 2012, the Association responded that it was not sure. Dkt. # 158-1. Indian Harbor offers many more examples, each supported by evidence. Dkt. # 157 at 2-7; *see also* Dkt. ## 158-1 to -7.

On this front, Indian Harbor raises important questions of fact defeating summary judgment. *Frank Coluccio Const.*, 150 P.3d at 1156 ("The test for fortuity is a subjective, not objective, one and involves questions of fact."). It raises questions such as what the parties' perception of risk was when the policy was issued and whether the loss could reasonably have been foreseen by the Association. These questions must be resolved by a factfinder.

### B.  Bad Faith

The parties cross-moved for summary judgment on the Association's bad faith claim before. Dkt. ## 30, 36. Denying the motions, Court previously found that reasonable minds could disagree about whether Indian Harbor's investigation and denial of coverage were done in bad faith. Dkt. # 119 at 4-6. In this motion, the Association again seeks summary judgment on its bad faith, IFCA, and CPA claims. Dkt. # 155. The reason, it says, is that since the Court's previous ruling, "the facts have crystalized, and, based on Indian Harbor's own admissions, it is no longer feasible for it to dispute the

ORDER – 10

reasonableness of its denial and surrounding conduct." *Id.* at 17.

"In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (internal quotation marks omitted) (quoting *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 169 P.3d 1 (Wash. 2007)). The determinative question is "the reasonableness of the insurer's action in light of all the facts and circumstances of the case." *Indus. Indem. Co. of the Nw. v. Kallevig*, 792 P.2d 520, 528 (Wash. 1990). "Whether an insurer acted in bad faith is generally a question of fact." *Sharbono v. Universal Underwriters Ins. Co.*, 161 P.3d 406, 410 (Wash. Ct. App. 2007)). "[A]n insurer is only entitled to . . . dismissal on summary judgment of a policyholder's bad faith claim if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances." *HB Dev. LLC v. W. Pac. Mut. Ins. Co.*, 86 F. Supp. 3d 1164, 1183 (E.D. Wash. 2015) (quoting *Sharbono*, 161 P.3d at 410)).

Since the Court's previous summary judgment order, the following facts are no longer in genuine dispute: On April 6, 2018, the Association submitted a claim to Indian Harbor, notifying it of damage discovered on its property and requesting coverage. Dkt. # 31-1. Attached to that notice were nine photographs of the damaged property. *Id.* A few days later, Indian Harbor sought advice from the law firm Cozen O'Connor. Dkt. # 156-8 at 6-7; Dkt. # 156-9. Based on Cozen O'Connor's review of the claim, it determined that Indian Harbor did not owe the Association coverage. Dkt. # 61-1. It believed that the policy's suit limitation provision "preclude[d] coverage for th[e] entire matter." *Id.* at 2. Under the belief that "Washington courts have strictly enforced suit limitations clauses," it "recommend denying coverage for the claim as submitted." *Id.* at 3. It also recommended that Indian Harbor note "coverage issues" "based on the notice letter and photographs." *Id.* at 8. Lastly, it recommended that "since the suit limitation clause bars coverage regardless," Indian Harbor should "declin[e] to conduct any further

ORDER – 11

investigation." *Id.* at 7.  On April 24, 2018, consistent with its recommendations, Cozen O'Connor notified the Association that it believed the Indian Harbor policy did not cover the Association's loss. Dkt. # 31-3.  At the time, neither Cozen O'Connor nor Indian Harbor conducted an onsite investigation. Dkt. # 156-1 at 6-7.  Both Indian Harbor and Cozen O'Connor drew their conclusions by reviewing the policy, the notice of loss, and the photographs attached thereto.  *Id.*; Dkt. # 156-8 at 9-10; Dkt # 156-10 at 7.

Cozen O'Connor's legal conclusion proved to be incorrect.  As this Court explained in its previous order, "Indian Harbor's coverage obligations were not extinguished by the suit limitation provision." Dkt. # 119 at 5.  In 2012, this Court decided as much in *Yancey v. Hartford*, 2012 WL 12878687, at \*9 (W.D. Wash. Oct. 23, 2012).  *Id.*  There, this Court held that a suit limitation clause merely places a limitation on a plaintiff's legal remedies for a breach of the policy but does not preclude a claim for coverage.  *See Yancey*, 2012 WL 12878687, at \*9.  At the time, however, "no Washington court ha[d] considered precisely the same issue."  *Id.*

Six years later (and months after Cozen O'Connor denied the Association's claim), one court in this District affirmed *Yancey*'s conclusion.  *Lakewood Shores Homeowners Ass'n v. Cont'l Cas. Co.*, No. 2:18-cv-01353-MJP, 2018 WL 9439866, at \*3-\*4 (W.D. Wash. Dec. 14, 2018).  Two years after that, the Washington Court of Appeals followed suit in *West Beach Condominium v. Commonwealth Insurance Co. of America*, 455 P.3d 1193, 1199 (Wash. Ct. App. 2020), *review denied*, 466 P.3d 778 (Wash. 2020) ("[A] suit limitation clause says nothing about [an insurer's] underlying coverage obligations. It is thus merely a contractual modification to the statute of limitations otherwise applicable to [an insured]'s breach of contract claim. This clause does not negate coverage or extinguish [the insurer]'s obligations under the all-risk policies.").

Surely, Cozen O'Connor and Indian Harbor were mistaken.  But the question is whether that mistake was done in bad faith.  The Court cannot say that it was as a matter

ORDER – 12

of law.  "As long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a *good faith* mistake."  *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 937-38 (Wash. 1998) (emphasis in original).  When Cozen O'Connor issued its recommendation, it appears that this Court was the only court to hold that a suit limitation provision does not preclude coverage under Washington law.  It was only after Cozen O'Connor issued its recommendation did other courts agree with *Yancey*.  Indeed, the Washington Court of Appeals affirmed the *Yancey* decision two years after Cozen O'Connor issued its recommendation.  Given the development of this precedent (and its timing), reasonable minds could disagree about whether Cozen O'Connor's mistaken legal conclusion at the time—and Indian Harbor's eventual denial of coverage—were done in bad faith.

Finally, like last time the Court cannot rule on the Association's IFCA and CPA claims because they "depend[] upon the reasonableness of Indian Harbor's conduct, which the Court cannot determine as a matter of law."  Dkt. # 119 at 8-9.  As to the Association's bad faith, IFCA, and CPA claims, the Association fails to meet its summary judgment burden.

**C.     Offset**

The Association sought coverage from seven insurance companies.  Dkt. # 147 at 2; Dkt. # 151at 2, 6.  One of those companies admitted coverage.  Dkt. # 151 at 2 n.1.  Five settled.  Dkt. # 147 at 2; Dkt. # 151at 2, 6.  Indian Harbor is the only remaining insurer.

To date, the Association has received $18,983,380 from the six other insurance companies.  Dkt. # 148 Exs. D-I; Dkt. # 151 at 6.  In its initial disclosures, the Association estimated that its damages totaled $16,277,185 "for the overall cost of the repair project."  Dkt. # 148 at 14.

Indian Harbor now moves for summary judgment, arguing that the settlement

ORDER – 13

payments should be offset from the Association's claim of actual damages and that claims against Indian Harbor should be dismissed. Dkt. # 147. Its argument goes: Under Washington law, a party may not obtain double recovery for the same damages. *Id.* at 3. Here, the Association has already recovered the amount it seeks in damages and then some. *Id.* The settlement payments must be offset from the Association's claim for damages. *Id.* at 4-8. And "[s]ince the Association has already recovered significantly more than its claimed actual damages, it cannot seek additional damages against Indian Harbor, and this action against Indian Harbor should be dismissed." *Id.* at 4.

The Court will not rule on the issue of offset here: it is premature. But the Court will say that the burden to prove offset falls on Indian Harbor.

Implied throughout Indian Harbor's motion is that the Court can and should rule on the issue of offset now—before trial, before damages have been proven, and before a verdict. Indian Harbor offers no authority explaining why that should be the case. In fact, in the case that Indian Harbor principally relies on, *Litho Color Inc. v. Pacific Employers Insurance Co.*, the offset was conducted *after* a jury verdict. 991 P.2d 638, 643 (Wash. Ct. App. 1999) ("The jury subsequently awarded Litho $366,000 for liability under the B & M endorsement. The trial court *then* granted an offset of $193,000 by deducting from the PEIC payment of $335,000 those amounts the court concluded did not constitute double recovery." (emphasis added)). Other courts have done the same. *See, e.g.*, *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115, 125 (Wash. 2000) ("*Following the Phase II trial*, CU moved to set off settlement funds received by Weyerhaeuser from other insurance carriers against the Phase I and Phase II jury verdicts." (emphasis added)). For several reasons, the Court finds that the issue of offset is best left for after trial.

First, an offset ruling would not dispatch this case. Indian Harbor postulates that it would, arguing that summary judgment would avoid an unnecessary trial. Dkt. # 153 at 4-5. But the Association asserts other claims beyond coverage. Dkt. # 26. It asserts

ORDER – 14

claims for bad faith and violations of the CPA and IFCA. *Id.* As discussed above, those claims have survived summary judgment (twice now) and must be resolved by a jury. An offset ruling would not resolve those factual issues. Separately, Indian Harbor assures the Court that it would not be "reward[ed]" should this case be dismissed, for it would still be "subject to contribution claims by previously-settling insurers." Dkt. # 153 at 2, 5 n.1. That concession is irrelevant. Indian Harbor may well owe indemnity obligations to settling insurers. Why that would obviate the need for the Association to prove its case against Indian Harbor, however, is a mystery. The Court concludes that it would not. Indian Harbor has provided no authority or argument to suggest otherwise.

Second, the Court cannot rule, as a matter of law, that the nearly $19 million in settlement payments would fully compensate the Association, should the Association prevail on its remaining claims. For example, if the Association prevails on its IFCA claim, Indian Harbor could be liable for treble damages. Wash. Rev. Code § 48.30.015 ("[A]fter finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits . . ., [a court may] increase the total award of damages to an amount not to exceed three times the actual damages."). Assuming the Association prevailed and was so entitled to treble damages, treble damages would need to be calculated using actual damages. Actual damages must be established at trial. The $16 million figure offered by the Association was merely an estimate provided in the Association's initial disclosures. It has not been proven, and the Court has no reason to believe that Indian Harbor stipulates to that figure. These issues are unresolved. On summary judgment, the Court will not prophesy how they may turn out. And, at this stage, the Court cannot rule that the Association has been made whole.

The Court will, however, take the opportunity to provide clarity. The parties disagree about who carries the burden to prove offset. Dkt. # 151 at 7-10; Dkt. # 153 at 2. The Washington Supreme Court has clearly resolved the matter: "[The] [i]nsurer[] bear[s] the burden of establishing the right to and amount of any offsets necessary to

ORDER – 15

avoid double recovery." *Puget Sound Energy, Inc. v. Alba Gen. Ins. Co.*, 68 P.3d 1061, 1065 (Wash. 2003). Indian Harbor argues that the holding is limited to "environmental coverage cases." Dkt. # 147 at 6-7. But Indian Harbor's narrow interpretation of the Washington Supreme Court's holding in *Alba* is unsupported by the cases that followed or the decision itself. The *Alba* court framed the issue before it as "who carries the burden of establishing the extent of an offset for payments received by an insured from settling insurers—the insured or the nonsettling insurers[?]" *Alba*, 68 P.3d at 1062. The framing of the issue, and thus *Alba*'s ultimate holding, were not limited to "environmental coverage claims" as Indian Harbor would like the Court to believe. Dkt. # 147 at 7. *Alba* and *Weyerhaeuser v. Commercial Union Insurance* both apply here.

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Indian Harbor's Motion for Summary Judgment (Dkt. # 147) and **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment (Dkt. # 155).

DATED this 31st day of March, 2021.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 16